IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYMOND H. ALEXANDER,<br>    Plaintiff,<br><br>        v.<br><br>KELLY EATON<br>PROBATION OFFICER, *et al.*,<br>    Defendants. | :<br>:<br>:<br>:  Civil No. 5:22-cv-05066-JMG<br>:<br>:<br>:<br>: |

MEMORANDUM OPINION

**GALLAGHER, J.**                                                                                     January 31, 2024

## I.   OVERVIEW

Before the Court is the Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 43). For the reasons stated herein, the Court finds Plaintiff's Complaint fails to state a claim upon which relief can be granted for all counts except one. The claim against Probation Officer Eaton for the false arrest that occurred in December 2021 survives this Motion to Dismiss. Therefore, Defendants' Motion to Dismiss (ECF No. 43) is granted in part and denied in part.

## II.  BACKGROUND

Plaintiff, Raymond H. Alexander, proceeding *pro se*, initiated the instant action by filing an amended complaint on July 19, 2023 (the "Complaint"), bringing twenty (20) claims pursuant to 42 U.S.C. § 1983 against five named defendants, all of whom are identified as probation officers: Kelly Eaton, Stephen Cullen, Todd Clark, Eric Pennypacker, and Deanna Welch ("Defendants" or "Named Defendants"). *See* Complaint (ECF No. 35). Plaintiff also lists, but does not bring any specific claims against, John Does 1 to 10 and the Department of Corrections. *Id.*

Plaintiff's Complaint consists of twenty numbered claims, each claim includes the same two generic paragraphs with a unique factual paragraph. *Id.* Plaintiff claims the Named Defendants'

violated Plaintiff's First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. *Id.* Additionally, Plaintiff asserts that each of the named Probation Officers:

> knowing and intentional acts against plaintiff violated plaintiff's rights to exercise protected conduct, to be free from illegal searches and seizures, to be free from double jeopardy violations, to be free from *ex post facto* violations, to have counsel, to be free from cruel and unusual punishments, and to receive procedural due process under Amendments to the U.S. Constitution, thereby knowingly and intentionally causing physical, mental, and financial harm to plaintiff.
>
> knowing and intentional acts against plaintiff committed the common law torts of Assault, Battery, Conspiracy, False Arrest, Intrusion upon Seclusion, Malicious Prosecution, Trespass to Land, Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional Distress, thereby knowingly and intentionally causing physical, mental, and financial harm to plaintiff.

*Id.* at 26-43.[1]

Plaintiff's Complaint seeks compensatory damages for "continuing additional medical expenses caused by the defendants' acts against plaintiff" in addition to legal expenses and fees, and punitive damages. *Id.* at 44.

Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint on August 22, 2023. (ECF No. 43). Plaintiff filed a Response in Opposition on August 29, 2023. (ECF No. 48). On August 31, 2023, Defendants filed a Motion Requesting the Court's Permission to file a reply brief. [ECF No. 49]. The Court granted permission [ECF No. 50], and the reply brief (ECF No. 51) was filed on August 31, 2023. Thereafter, Plaintiff sought leave to file another reply (ECF No. 52) which was granted on September 1, 2023 [ECF No. 53]. On that same date, Defendants' Second Reply was deemed filed [ECF No. 54].

## III.  LEGAL STANDARD

   a.  **Fed. R. Civ. P. 12(b)(6)**

---

[1] The Plaintiff's statements herein are quoted as written.

Pursuant to Fed. R. Civ. P. 12(b)(6) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 Fed. Appx. 147, 149 (3d. Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

   b.  **Section 1983 claims – Review of Applicable Law**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The first step for the court analyzing a claim under § 1983 "is to identify the exact contours of the underlying right said to have been violated*.*" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998). The court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Id*.). Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). The court must also determine whether a defendant is acting under color of state law, i.e., whether the defendant is a state actor, which depends on whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior

3

'may be fairly treated as that of the State itself.'" *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). Additionally, a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." See *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id*. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A supervisory defendant may be liable under 42 U.S.C. § 1983 if the defendant, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the plaintiff's] constitutional harm." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989).

    c. **Conspiracy Claims Under Section 1983**

"To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

In order to establish a conspiracy claim, the plaintiff must allege facts showing: (1) "a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose;" (2) "an overt act done in pursuance of the common purpose;" and (3) "actual legal damage." *Schlichter v. Limerick Twp.*, No. 04-CV-4229, 2005 U.S. Dist. LEXIS 7287, at *31 (E.D. Pa. Apr. 26, 2005). "The plaintiff must make

specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Hammond v. Creative Fin. Planning Org.*, 800 F. Supp. 1244, 1249 (E.D. Pa. 1992).

### d. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court has "recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials -- like other officials who act in ways they reasonably believe to be lawful -- should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "A court required to rule upon the qualified immunity issue must consider [first]: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The "next, sequential step is to ask whether the right was clearly established." *Id*. The court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *Gaymon v. Borough of Collingdale*, No. 14-5454, 2015 U.S. Dist. LEXIS 93014, at *7 (E.D. Pa. July 17, 2015).

## IV. ANALYSIS

As an initial basis for dismissal, Defendants contend Plaintiff's Complaint should be dismissed because it "is not simple, concise, and direct" which they argue is against the purpose of Rule 8. *See* ECF No. 43-2 at 11. This Court agrees but declines to dismiss the Complaint for this reason. Although this Court is mindful it must "employ less stringent standards when considering pro se

pleadings than when judging the work product of an attorney," pro se plaintiffs "are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim." *Walker*, 2023 U.S. Dist. LEXIS 101595 at *3-4. Accordingly, the Court will evaluate the complaint in a light construed most favorably to the Plaintiff by evaluating the Complaint as it is stated.

### A. The Complaint in part fails to state a claim under § 1983.

A Plaintiff must plead facts showing *how* or *why* Plaintiff determined Defendants' conduct was unlawful and violated his Constitutional rights. *See Walker v. Conway*, No. 23-473, 2023 U.S. Dist. LEXIS 101595 at *5 (W.D. Pa. June 12, 2023) (dismissing pro se plaintiff's complaint where "Plaintiff alleges no facts to suggest how he arrived at any of those legal conclusions" averred in the plaintiff's complaint); *see also Waris v. Mackey*, No. 09-1103, 2009 U.S. Dist. LEXIS 116961 at *30 (E.D. Pa. Dec. 14, 2009) (holding Plaintiff failed to state an extortion claim, holding "Plaintiff's legal conclusion is insufficient to state a claim; he must plead facts supporting his legal conclusion" and Plaintiff "failed to plead any facts [] showing how he determined Defendants' purpose in the prior litigation was to extort the value of his claim.").

Indeed, "it is well settled that to state a civil rights claim under § 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987). Here, Plaintiff's Complaint fails to plead any specific factual allegations of unlawful conduct in regard to the following claims:

    **1.** Plaintiff repeatedly asserts that all Defendants violated his constitutional rights in regard to double jeopardy, ex post facto, representation of counsel, cruel and unusual punishment, and

procedural due process. The Complaint spans over 250 paragraphs, but it is devoid of any factual allegations to support these claims.

**2.** Plaintiff asserts that Probation Officer Welch "forced plaintiff to sign and initial Standard Special Conditions for Sex Offenders." ECF No. 35 at 8. Plaintiff also states "Defendant Welch had no authority to impose those conditions on plaintiff. Doing so violated state laws… and plaintiff's U.S. Constitutional rights." *Id*. The Plaintiff's statement amount to legal conclusions, but he does not state how this violated his rights, which rights were violated, or why this conduct violated his rights.

**3.** The Complaint improperly claims respondeat superior liability for Probation Officers Clark and Pennybacker. A supervisory defendant may be liable under 42 U.S.C. § 1983 if the defendant, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the plaintiff's] constitutional harm." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989). Plaintiff alleged that both Clark and Pennybacker received reports involving what he viewed as unconstitutional behavior from Eaton and Cullen. ECF No. 35 at 24. Plaintiff further alleged that both Clark and Pennybacker were deliberately indifferent towards the reports and did not act on them. *Id*. This is a legal conclusion on his part and not substantiated by any facts presented.

**4.** Plaintiff alleges there was a conspiracy amongst the Defendants. Specifically, the Plaintiff states, "Believing that additional probation conditions were both warranted and necessary. The defendants and others as yet unknown devised a plan." *Id*. at 7. Plaintiff's allegations of a conspiracy in the Complaint are entirely conclusory and therefore insufficient to state a claim. *See Great W. Mining & Mineral Co.*, 615 F.3d at 176 (holding that the court does "not consider any conclusory allegations that there was 'a corrupt conspiracy,' 'an agreement,' or 'an understanding

in place between the Defendants and [state officials]" and that the plaintiff failed to allege, *inter alia*, the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy). Plaintiff did not include any facts to support this allegation to prove a conspiracy was established. No facts were presented to show that a conspiracy was formed or which malicious acts were taken against him in furtherance of the conspiracy.[2]

    **5.** Plaintiff also states a retaliation claim against Probation Officer Cullen. However, Plaintiff does not state a claim of which relief can be granted. For a retaliation claim one must show that "his conduct was constitutionally protected. Then, he must show retaliatory action… Finally, he must establish a causal link between his constitutionally protected conduct and the adverse action taken against him." *Proctor v. Burke*, 630 F. App'x 127, 130 (3d Cir. 2015). He does not state what his protected conduct was or how that led to his retaliation. Also, he does not demonstrate how the protected conduct was casually connected to the retaliation action.

Overall, Plaintiff fails to allege sufficient facts to support his legal conclusions. This is fatal to his claim. "Generally speaking, a complaint that provides adequate facts to establish how, when, where, and why will survive a motion to dismiss." *Rubin v. State Farm Mut. Auto. Ins. Co.*, No. 10cv1651, 2011 U.S. Dist. LEXIS 1613 at *10 (W.D. Pa. Jan. 7, 2011). Here, Plaintiff's Complaint fails to plead sufficient facts demonstrating *why* Defendants' alleged conduct is unlawful. Rather, much of Plaintiff's allegations are presented in the form of vague legal conclusions. Such vague and conclusory pleading as demonstrated above is insufficient to withstand a motion to dismiss. *See Jacobs v. Zampiri*, No. 22-cv-2861, 2023 U.S. Dist. LEXIS 8320 at *6 (E.D. Pa. Jan. 17, 2023)

---

[2] Plaintiff does not state if he is bringing the conspiracy allegations under § 1983, § 1985, or state law. However, under any of these standards, his presented facts are deficient to state a claim.

(holding plaintiff's "false arrest claim fails [] because he has not alleged facts that would plausibly support his legal conclusion that probable cause was lacking for his arrest" and instead pleads "vague and conclusory" allegations that "merely recite the elements of a false arrest claim.").

**B. Probation Officers Eaton and Cullen are protected by qualified immunity.**

The Defendants contend that Eaton and Cullen are immune from suit for their alleged improper search and false arrest because of qualified immunity. ECF No. 43 at 21. The Court agrees with this assessment with respect to the alleged improper search and one of the false arrest claims. As indicated above, qualified immunity requires a fact intensive analysis where qualified immunity will apply if there was a violation of a constitutional right and that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As a reminder, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in his favor. *Gaymon v. Borough of Collingdale*, No. 14-5454, 2015 U.S. Dist. LEXIS 93014, at *7 (E.D. Pa. July 17, 2015). Probation Officers fall under the category of executive officers that are protected under qualified immunity. *See Donaldson v. Mugavero*, 126 Fed.Appx. 63, 65 (3d Cir. 2005). Because qualified immunity protects executive officers from all but the most delinquent or intentionally unlawful actions, executive officers have wide latitude to conduct their duties. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Probation Officers Eaton and Cullen did not violate Plaintiff's Fourth Amendment right by searching the house in either of the instances. Parole officers only need reasonable suspicion to search a parolee's residence. *See U.S. v. Baker*, 221 F.3d 438, 443 (3d Cir. 2000). Parolees do not have the absolute protections of the Fourth Amendment that ordinary citizens possess. *See Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Instead, the government has a heightened need to

supervise parolees and prevent them from reviolating societal laws. *Samson v. California*, 547 U.S. at 843, 855 (2006).

Additionally, Plaintiff repeatedly contends that probation officers unlawfully increased the conditions of his probation by subjecting him to drug monitoring. However, Pennsylvania regulations establish general conditions of special probation or parole which include offenders "[a]bstain[ing] from the unlawful possession or sale, of narcotics and dangerous drugs and abstain[ing] from the use of controlled substances within the meaning of the Controlled Substance, Drug, Device and Cosmetic Act (35P. S. §§ 780-101--780.144) without a valid prescription." 37 Pa. Code § 65.4 (5)(i). Courts have also found that a probationer's fourth amendment rights were not violated by urine testing employed by a probation officer to determine whether probationer was using drugs in violation of probation conditions. *United States v. Duff*, 831 F.2d 176 (9th Cir.1987).

The first incident where Plaintiff alleged an illegal search conducted by Probation Officers Eaton and Cullen occurred August 31, 2021. ECF No. 35 at 11. During this incident, Eaton and Cullen conducted a walkthrough of the house after Plaintiff was unable to produce a urine sample. *Id*. Failing to produce a urine sample during this incident is significant because during every other home visit discussed in the Complaint, Plaintiff was able to produce a urine sample. Furthermore, Plaintiff states that he was previously arrested for drugs and drugs were found in his possession again when he was arrested in 2001. *Id.* at 13 and ECF No. 35-5 at 1. When combined, these factors amount to reasonable suspicion for Eaton and Cullen to conduct a walkthrough of the house in order to ensure Plaintiff who was still on probation was not in possession of contraband.

The second incident that Plaintiff described occurred on April 14, 2022. ECF No. 35 at 23. At that time, Probation Officers Eaton and Cullen arrived at Plaintiff's home, and the Plaintiff denied

them entry into the dwelling. *Id*. This is the first time Plaintiff did not allow them into his house according to the Complaint. Eaton and Cullen placed Plaintiff into handcuffs and entered the house. They searched the house, conducted a blood-alcohol breath test on Plaintiff, and released him from handcuffs. *Id*. Because Plaintiff has a history of contact with drugs and this is the first time he refused entry into his house, these factors could amount to reasonable suspicion for Eaton and Cullen to search the house to ensure Plaintiff was not in possession of illegal drugs. It was also reasonable for Eaton and Cullen to place Plaintiff in handcuffs during the search for their safety.

**C. The Department of Corrections is immune from § 1983 claims.**

The Plaintiff named the Pennsylvania Department of Corrections (DOC) as a Defendant. The Plaintiff states that he added the DOC because it employed the other named Defendants and that he may need to seek injunctive relief. ECF No. 35 at 3. The Pennsylvania Department of Corrections is not a "person" amenable to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989); *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (*per curiam*) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI-Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983.").

The Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, and the Commonwealth of Pennsylvania has not waived that immunity. *See Will*, 491 U.S. at 65-66; 42 Pa.C.S. § 8521. "Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity." *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). As a result, the claims against DOC are barred.

**D. Sovereign immunity prevents tort claims against Pennsylvania employees.**

Defendants correctly raise the defense of sovereign immunity regarding Plaintiffs' state law claims. In Pennsylvania, "[t]he Commonwealth, and its officials and employees acting within the scope of their duties shall . . . remain immune from suit," 1 Pa.C.S. § 2310, including for intentional torts, *see La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992). There are nine exceptions including motor vehicle operation, medical malpractice, care of personal property, dangerous conditions of real estate, dangerous conditions of highways, care of animals, liquor store sales, activities of National Guard, and the use of toxoid or vaccines. *See* 42 Pa. Cons. Stat. Ann. § 8522(b)(1)-(9). Defendants are all employees of the Pennsylvania Department of Corrections and acted within the scope of their employment.

Plaintiff repeatedly asserts that the Defendant's actions were outside the scope of their employment. But this is a legal conclusion, and the Court is not required to accept it as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "we look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (cleaned up).

An employee's conduct is considered within the scope of employment for purposes of vicarious liability if: (1) it is of a kind and nature that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the employer; and (4) if force is intentionally used by the employee against another, the use of force is not unexpected by the employer. *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998) (citing Restatement (Second) of Agency § 228) (cleaned up).

Accepting "all factual allegations as true [and] constru[ing] the complaint in the light most favorable to plaintiff," *Warren Gen. Hosp. v. Amgen, Inc*., 643 F.3d 77, 84 (3d Cir. 2011), all conduct of the named Defendants was within the scope of their employment. All the Defendants are probation officers charged with the duty to enforce probation conditions against Plaintiff. As stated throughout the Complaint, the Defendants conducted searches of Plaintiffs resident, detained and arrested Plaintiff, filed technical violations, performed drug and alcohol test on Plaintiff, and visited him at his residence. All of these actions are in line with the conduct that probation officers are supposed to perform in furtherance of their job. Plaintiff does not supply any factual assertions to support his claims that the probation officers were acting outside the normal bounds of employment. Accordingly, this Court finds that the Defendants were acting within their scope of employment and are protected by sovereign immunity against the state tort claims brought against them.

**E.  One of the false arrest allegations under § 1983 survives this Motion to Dismiss.**

An alleged false arrest incident occurred on December 9, 2021. ECF No 35 at 14. Plaintiff accused Probation Officer Eaton of false arrest. False arrest under the Fourth Amendment occurs when: (1) an arrest occurred; and (2) there was no probable cause for the arrest. *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). On this day, Eaton visited Plaintiff at his house where they engaged in a "heated argument", and Plaintiff left the room without Eaton's permission. *See* ECF No. 35 at 17. Eaton threatened to use pepper spray against Plaintiff upon Plaintiff's return to the room. Eaton then deployed handcuffs to detain Plaintiff. After restraining Plaintiff, Eaton forced Plaintiff outside for 30 minutes until Eaton consulted with his supervisor on what next steps to take. *See id*. at 18. It is important to note that Plaintiff was not wearing shoes at this time with near-freezing temperatures outside. Plaintiff was verbally told that he was not

under arrest while being forced outside. *Id*. A fair inference can be drawn that Plaintiff was then released at the direction of Probation Officer Cullen (Eaton's supervisor whom he spoke with on the phone). *See id*. Defendants contend that Plaintiff was not placed under arrest, and alternatively, any arrest was supported by probable cause. The Court must disagree at this stage of litigation, given the low bar for surviving a motion to dismiss. The facts as alleged in the Complaint supports the allegation of false arrest occurring on December 9, 2021. Also, at this stage in litigation, the Court cannot extend the protections of qualified immunity to Eaton for this conduct. Based on the alleged facts as construed most favorably to the Plaintiff, the Plaintiff was arrested in the absence of probable cause. A reasonable officer in a similar situation would not arrest someone without probable cause which amounts to a violation of Plaintiff's Fourth Amendment rights.

## V. CONCLUSION

Because the Court finds that Plaintiff's Complaint fails either to plead sufficient facts upon which a claim for relief may be stated, or Defendants are immune, the Court dismisses most of Plaintiff's complaint on these grounds and need not examine Defendants' additional arguments in favor of dismissal for these counts. However, the § 1983 false arrest claim against Probation Officer Eaton for the December 2021 incident is not dismissed and shall proceed to discovery.

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 43) is **GRANTED IN PART AND DENIED IN PART**. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge