IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| **RAYMOND H. ALEXANDER** : | |
| Plaintiff, : | |
| : | |
| v. : | Civil No. 5:22-cv-05066-JMG |
| : | |
| **KELLY EATON,** *et al.*, : | |
| Defendants. : | |

---

MEMORANDUM OPINION

**GALLAGHER, J.**                                                                                          **January 17, 2025**

## I.     OVERVIEW

This case is before the Court at the motion to dismiss stage, once again, following Plaintiff's Second Amended Complaint. Plaintiff brings numerous claims alleging constitutional violations by his probation officers. Most of Plaintiff's claims fail, and many are barred by qualified immunity; however, two will move onto discovery. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 91) will be granted in part and denied in part.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Raymond Alexander has brought several claims alleging constitutional violations against his probation officers under 42 U.S.C. § 1983 ("Section 1983"). Plaintiff was convicted of Involuntary Deviate Sexual Intercourse, Statutory Sexual Assault, and Corruption of Minors in the Bucks County Court of Common Pleas on March 28, 2001. *See* Second Am. Comp. (ECF No. 88) at ¶ 8. In August of 2001, he was sentenced to 8 to 16 years in prison, and he received two consecutive probation sentences of 20 years and five years. *See id.* at ¶ 9. He avers that this probation sentence was over the legal maximum and was later reduced to 10 years. *See id.* Plaintiff

1

was in prison from March 28, 2001, until August 19, 2012, when he was released on parole. *See id.* at ¶ 10. Plaintiff was on parole until March 27, 2017, then he began his probation sentence. *See id.* at ¶¶ 11-12. Plaintiff states that on July 16, 2009, a judge on the Bucks County Court of Common Pleas issued an *ex parte* Order, *see* ECF No. 81-5, which required that Plaintiff comply with "General Conditions of Special Probation as set forth in 37 Pa. Code § 65.4." *Id.* Plaintiff alleges that this *ex parte* Order was illegally issued because there was no court hearing as is required by 42 Pa. C.S. § 9771(d). *See* ECF No. 88 at ¶ 21.

Plaintiff was supervised by several different probation or parole officers during the time that he was supervised by the Pennsylvania Board of Probation and Parole. First, he was supervised by non-party Agent Dragon who had Plaintiff's case from August 2012 until March 2013. *See id.* at ¶ 15. Next, Plaintiff was supervised by non-party Agent Sabol until September 2015. *See id.* at ¶ 16. During this period of supervision, he was tested for controlled substances—during Agent Sabol's supervision, he avers that he was tested "an average of one test every five months." *Id.* at ¶¶ 15-16.

In September 2015, Plaintiff was assigned to Defendant Agent Deana Welch. *See id.* at ¶ 17. Under her supervision, she too administered testing for controlled substances with an average frequency of "one test every seven months." *Id.* at ¶ 17. Plaintiff avers that he did not fail any of these drug tests. *See id.* at ¶ 18. During Defendant Welch's supervision, Plaintiff alleges that she "forced [him] to sign and to initial a Standard Special Conditions for Sex Offenders form." *Id.* at ¶ 46; *see also* 81-14. Plaintiff alleges that Defendant Welch had no authority to impose these conditions on Plaintiff and by doing so she violated his statutory and constitutional rights. *See* ECF No. 88 at ¶ 47.

2

In December 2020, Plaintiff states that Defendant Welch informed him that Plaintiff's supervision would be transferred to Defendant Kelly Eaton. *See id.* at ¶ 50. He alleges that Defendant Eaton specialized in supervising sex offenders. *See id.* Plaintiff claims that while under Defendant Eaton's supervision, Defendant Eaton increased the amount of times Plaintiff was tested for controlled substances without a legitimate penological reason. *See id.* at ¶¶ 45, 52. He alleges that this increase in the frequency of testing constituted an illegal increase in his sentence. *See id.* at ¶ 54.

On December 9, 2021, Plaintiff alleges that Defendant Eaton visited Plaintiff's home for a visit pursuant to his supervision of Plaintiff's probation sentence. *See id.* at ¶ 93. While there, Plaintiff raised concerns about the frequency of the drug testing that he was subject to, and an argument ensued. *See id.* at ¶¶ 96-108. At one point during the elevated argument, Plaintiff claims he started to leave the room. *See id.* at ¶ 109. As Defendant started to leave the room, Plaintiff alleges that Defendant Eaton "knowingly and intentionally reached for his sidearm" and screamed at him "You don't get to turn your back on me!!" *Id.* at ¶ 110. Plaintiff returned to the room, at which point Plaintiff claims Defendant Eaton menaced Plaintiff with pepper spray. *See id.* at ¶ 111. Plaintiff then alleges that he was handcuffed by Defendant Eaton. *See id.* at ¶ 114. Plaintiff says he asked Defendant Eaton for the basis for his arrest, and Plaintiff alleges that Defendant Eaton responded that Plaintiff was "not under arrest." *See id.* at ¶¶ 114-15. Plaintiff then claims that Defendant Eaton removed him from his home and put him outside "in near freezing weather." *See id.* at ¶ 115. Plaintiff alleges that he was barefoot, without a coat or gloves, and was forced to sit outside on a cold stone for a half an hour. *See id.* at ¶ 116. Plaintiff was not released until Defendant Eaton spoke with Defendant Cullen. *See id.* at ¶ 117.

3

The next day, Plaintiff was required to report to the Defendants' Allentown office. *See id.* at ¶ 117. While there, Defendant Cullen is alleged to have required Plaintiff to sign a HIPPA release for his treatment records with his psychologist. *See id.* at ¶ 123. Plaintiff also alleges that he was ordered to seek an evaluation for sex offender treatment. *See id.* at ¶ 124. Plaintiff argues and avers that these were illegal enhancements to his probation sentence and that these actions were taken in retaliation for his statements during the argument at Plaintiff's house on December 9th. *See id.* at ¶¶ 123-24.

On December 15, 2021, Plaintiff's psychologist, Dr. Kenneth Sperling, emailed Defendant Todd Clark—who was Defendants Eaton and Cullen's supervisor. *See id.* at ¶ 134. Dr. Sperling expressed concerns regarding Defendants Eaton and Cullen's supervision of Plaintiff. *See id.* at ¶ 134. Defendant Clark is alleged to have responded saying "For the time being, Agent Eaton will continue to supervise [Plaintiff]. Additionally, [Plaintiff] must obtain the sex offender evaluation … which he was ordered to obtain." *Id.* at ¶ 134.

On December 20, 2021, Plaintiff filed a written complaint against Defendants Eaton and Cullen with Defendant Clark, and he was informed in response that a violation hearing would take place. *See id.* at ¶ 137. Plaintiff alleges that Defendants Eaton and Cullen filed a false technical violation charge against Plaintiff in response to his complaint to Defendant Clark about their supervision. *See* id. at ¶¶ 139, 141.

Next, on April 14, 2022, Defendants Eaton and Cullen came to Plaintiff's home for a supervision visit, and Plaintiff met them outside. *See id.* at ¶ 161. Plaintiff refused their entry into his home. *See id.* Defendants claimed that Plaintiff's refusal to permit them into his home was "unusual and suspicious." *See id.* at ¶ 163. Plaintiff was seized by the Defendants while they proceeded to search his home. *See id.* at ¶¶ 170, 172.

4

The next day, Plaintiff again wrote Defendant Clark complaining of Defendants Eaton and Cullen's conduct. *See id.* at ¶ 185. Plaintiff also filed a written complaint against Defendants Eaton, Cullen, and Clark with Defendant Eric Pennypacker; Pennypacker was the supervisor of the other three Defendants. *See id.* at ¶ 186. Defendant Pennypacker responded: "Upon review, staff are acting in accordance with what is legally permissible. I support Dr. Clark's 4/15/22 response to you. Staff will continue to supervise you until the conclusion of your state supervision." *Id.*

Plaintiff filed a Complaint on December 19, 2022, bringing Section 1983 claims against Defendants Clark, Cullen, Eaton, and Pennypacker. *See* ECF No. 1. Defendants moved to dismiss Plaintiff's Complaint on March 21, 2023. *See* ECF No. 13. This Court granted Defendants' Motion to Dismiss and dismissed the Complaint without prejudice and granted Plaintiff leave to amend. *See* ECF No. 34. Plaintiff filed his First Amended Complaint on July 19, 2023. *See* ECF No. 35. Defendants again moved to dismiss on August 22, 2023. *See* ECF No. 43. The Court granted this motion in part and denied it in part on January 31, 2024; the Court permitted Plaintiff's Section 1983 claim alleging false arrest in December 2021 to proceed but dismissed the remainder of the First Amended Complaint. *See* ECF No. 64.

Following the Court's Order, the Court ordered this matter referred to this District's Civil Rights Panel. *See* ECF No. 68. On February 20, 2024, Attorney Brian Zeiger entered his appearance in this case. *See* ECF No. 72. Plaintiff filed his operative complaint – the Second Amended Complaint on April 24, 2024. *See* ECF No. 88. This time, he named Defendant Welch in his allegations. Defendants again moved to dismiss for failure to state a claim. *See* ECF No. 91. Attorney Zeiger noticed his withdrawal of appearance on August 5, 2024, *see* ECF No. 100, and that same day Plaintiff, representing himself *pro se*, filed his Response in Opposition to Defendant's Motion to Dismiss. *See* ECF No. 99.

5

### III. LEGAL STANDARD

A motion made under Fed. R. Civ. P. 12(b)(6) seeks dismissal for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 Fed. Appx. 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

### a. Qualified Immunity

Defendants have argued in their Motion that they are protected under the doctrine of qualified immunity. *See* ECF No. 91-2 at 17-27. "The doctrine qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). There are two prongs to determine whether qualified immunity should apply. *See Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018). "First, whether the facts alleged (in the context of a motion to dismiss or for judgment on the pleadings) . . . make out a violation of a constitutional right. Second, whether the right at issue was clearly established at the time of the defendants' alleged misconduct." *Id.* (internal quotations omitted). "A right is clearly established

when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)) (cleaned up). Precedent may dictate if a right is clearly established. *See Montemuro v. Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 645 (3d Cir. 2024) ("A right is clearly established if the case law at the time of the alleged violation of the right would have put government officials on fair notice that their conduct violated the plaintiff's rights. We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." (internal citation omitted)).

If either of these prongs fail, qualified immunity will apply. *Id.* In making this determination at this stage in the litigation process, the court is to "accept plaintiff's allegations as true and draw all inferences in plaintiff's favor." *George v. Rehiel*, 738 F.3d 562, 581 (3d Cir. 2013); *see also Siehl v. City of Johnstown*, 365 F. Supp. 3d 587, 601 (W.D. Pa. 2019) ("[W]hen the defense of qualified immunity is raised on a motion to dismiss, the court must address the issue and accept all allegations of the complaint as true in applying the analysis.").[1]

## IV.  DISCUSSION & ANALYSIS

### a.  Count I – Violations of 42 U.S.C. § 1983

Plaintiff has alleged a litany of violations under 42 U.S.C. § 1983 ("Section 1983") against Defendants Eaton, Welch, Cullen, Clark, and Pennypacker. He alleges violations of his substantive due process rights, procedural due process rights, his right against unreasonable search and seizure, his right to equal protection, and his rights under the First Amendment.

---

[1] The Court notes that Plaintiff's argument regarding qualified immunity's constitutionality, *see* ECF No. 99 at 28, is misplaced. Under the doctrine of vertical stare decisis, "it is [the Supreme] Court's prerogative *alone* to overrule one of its precedents." *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) (emphasis added). It is certainly not within the province of this District Court to overturn or undercut this established doctrine.

7

A Section 1983 claim has two elements: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011). As to the first element, it requires that the defendant "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). "State employment is generally sufficient to render the defendant a state actor." *Id.* It is beyond contention that Defendants qualify as state actors by nature of their position as probation/parole officers. As to the second prong, the Court is required to "isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Moreover, "a plaintiff must aver facts to show the defendants' personal involvement in the alleged misconduct." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (defining personal involvement to "require[ ] particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode v. Dellarciprete*, 845 F.2d 1145, 1207 (3d Cir. 1988)).

### i. Defendant Welch

First, Plaintiff alleges that Defendant Welch violated his constitutional rights when she forced him to sign the Standard Special Conditions for Sex Offenders form. He alleges that this form "lists sex offender probation conditions that were never imposed on Plaintiff by any court." *See* ECF No. 88 at ¶ 199. Plaintiff alleges that because of this, Defendant Welch violated various constitutional rights including his right "exercise protected conduct," his right to "be free from unreasonable searches and seizures," his right to be "free from double jeopardy," and his substantive and procedural due process rights. *See id.* at ¶¶ 213-216.

Defendant Welch is protected under the doctrine of qualified immunity. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *McSpadden v. Wolfe*, 325 F. App'x 134, 138 (3d Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Plaintiff alleges that Defendant Welch lied to Plaintiff and forced him to sign the Standard Special Conditions for Sex Offenders form which lists sex offender probation conditions that were not specifically imposed on Plaintiff by a court. *See* ECF No. 88 at ¶ 99. Plaintiff was sentenced to a total of twenty-five years of probation, which he avers was later determined to be an unlawful sentence and was reduced to ten years. *Id.* at ¶ 9. The Bucks County Court of Common Pleas ordered this correction on August 12, 2022, and discharged Plaintiff from probation supervision. *See* Bucks County CCP Order, Ex. B ("ECF No. 81-4"). Defendant Welch was assigned to supervise Plaintiff from September 2015 until December 2020. *See* ECF No. 88 at ¶ 17. During this time, the original probation sentence was still in place, and she was acting pursuant to a facially valid, court-ordered sentence. *See Wolfe v. City of Pittsburgh*, 140 F.3d 236, 240 (3d Cir. 1998) ("'Facially valid' does not mean 'lawful.' An erroneous order can be valid." (quoting *Turney v. O'Toole*, 898 F.2d 1470, 1472-73 (10th Cir. 1990))); *see also* ECF No. 81-5.[2]

Additionally, Plaintiff alleges that Defendant Welch unlawfully placed additional probation conditions on Plaintiff without a hearing in violation of his constitutional rights and Pennsylvania law. The Court disagrees. It is true that 42 Pa. C.S. § 9771(d) provides "[t]here shall be no revocation or *increase of conditions* of [a probationary] sentence . . . except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation." (emphasis added). However, "[t]he Supreme Court

---

[2] The Court only assumes for the purpose of this Opinion that the probation sentence was illegal, as Plaintiff has averred in his Amended Complaint. *See* ECF No. 88 at ¶¶ 9, 12.

9

has held that officials do not forfeit qualified immunity from suit for violation of a federal constitutional right because they failed to comply with a clear state statute." *Doe v. Delie*, 257 F.3d 309, 318-19 (3d Cir. 2001) (citing *Davis v. Scherer*, 468 U.S. 183, 195 (1984)). The Court agrees with the Defendants that there was no clearly established federal right violated when Plaintiff was directed to sign sex offender conditions when he was subject to special probation conditions by a facially valid court order. *See* ECF No. 81-5.

To the extent that Plaintiff relies on *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011), this case is factually distinguishable from the present case. In *Brown*, the plaintiff was incorrectly placed in a sex offender probation unit following his conviction for false imprisonment. *See id.* at 1169 ("Under New Mexico's Probation Statute, false imprisonment is not a sex offense."). That is different from Plaintiff's convictions of involuntary deviate sexual intercourse and statutory sexual assault. *See* ECF No. 88 at ¶ 8. Accordingly, the Section 1983 claim against Defendant Welch is dismissed with prejudice.[3]

### ii. Defendants Eaton & Cullen

Plaintiff's Section 1983 claims against Defendants Eaton and Cullen are also foreclosed by the doctrine of qualified immunity. Plaintiff argues that additional provisions of his probation were illegally added by Defendants Eaton and Clark. Specifically, he alleges that (1) Defendant Eaton administered drug tests, at increasingly short intervals, *see* ECF No. 88 at ¶ 203, and (2) that Defendant Cullen provided him with written instructions to sign a release for his treatment records with his psychologist and to receive a sex offender evaluation. *See id.* at ¶¶ 123-24. The Court will analyze each in turn.

---

[3] Because it dismisses the claim on these grounds, the Court need not and does not address the Defendant's argument as to whether these claims have expired under the applicable statute of limitations period.

10

Some probationers are allowed to be tested for controlled substances under the regulations which regulate Pennsylvania's special probationers ("the regulations"). *See* 37 Pa. Code § 65.4(5)(i) (requiring a special probationer or parolee to "[a]bstain from the unlawful possession or sale, of narcotics and dangerous drugs and abstain from the use of controlled substances within the meaning of the Controlled Substance, Drug, Device and Cosmetic Act (35 P.S. §§ 780-101—780.144) without a valid prescription."). Plaintiff was subject to these regulations due to his status as a special probationer. *See* ECF No. 81-5; *see also Wolfe*, 325 F. App'x. at 240. Because Plaintiff was subject to drug testing by means of regulation, Defendants cannot be said to have unconstitutionally increased Plaintiff's sentence because they tested him at intervals he found to be too frequent. Moreover, Plaintiff has not cited any authority that would convince this Court that any such right was clearly established at the time of the alleged violation. For these reasons, qualified immunity applies as to this claim.

Plaintiff's claim that the written instructions provided to him by Defendants Eaton and Cullen similarly are foreclosed. The regulations also provide that special probationers or parolees are required to "follow[ ] written instructions of the . . . parole supervising staff." 37 Pa. Code § 65.4. Again, because he was subject to this condition, *see* ECF No. 81-5, he will not be able to proceed on the basis that Defendants required him to follow their issued, written instructions to obtain a sex offender evaluation and release his related medical records was an unconstitutional increase in his sentence. Plaintiff has also not cited authority demonstrating the violation of a clearly established right in this respect. Count II of Plaintiff's Complaint against Defendants Eaton and Cullen is dismissed with prejudice.

11

### iii. Defendants Pennypacker & Clark

Next, Plaintiff's Section 1983 claims against Defendants Pennypacker and Clark. A section 1983 claim required personal involvement by the allegedly liable party. *See Dooley*, 957 F.3d at 374 ("[A] plaintiff must aver facts to show the defendants' personal involvement in the alleged misconduct. Personal involvement requires particular allegations of personal direction or of actual knowledge or acquiescence."). Further, "[a]llegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A plaintiff is not permitted to hold defendants liable on Section 1983 claims on the basis of respondeat superior. *Id.*

Plaintiff's Second Amended Complaint fails to make out a Section 1983 claim against Defendant Pennypacker. Plaintiff appears to rest the entirety this claim on the basis of an email Pennypacker wrote to Plaintiff where he wrote "Upon review, staff are acting in accordance with what is legally permissible. I support Dr. Clark's 4/15/2022 response to you. Staff will continue to supervise you until the conclusion of your state supervision." *See id.* at ¶ 186. Plaintiff presents this response to his complaint as evidence that he approved of other Defendants' allegedly unlawful acts—specifically his allegations of a false arrest perpetrated by Defendants Eaton and Cullen on April 14, 2022. *See id.* at ¶¶ 186-87. Even if the Court assumes that there is enough plead in the Amended Complaint to support that Defendant Pennypacker had a sufficient amount of personal involvement in the alleged violation, Plaintiff's claim fails. The validity of the April 14th false arrest claim is discussed *infra*. The Court has determined that the officers are shielded from liability as to that allegation under the doctrine of qualified immunity. The Court will not allow this claim to proceed given that the underlying, related claim fails and will dismiss the claim against Defendant Pennypacker with prejudice.

Next, as it pertains to Defendant Clark, Plaintiff likewise fails to successfully maintain his Section 1983 claim. Plaintiff rests this claim on Defendant Clark's supposed acknowledgement and approval of Defendants Cullen and Eaton illegally increasing the terms of his sentence. *See id.* at ¶ 217. Once again, even assuming Plaintiff has sufficiently alleged personal involvement by Defendant Clark, the alleged constitutional violations at issue do not survive this Motion to Dismiss. A Section 1983 claim against Defendant Clark for allegedly approving an illegal increase is not cognizable when the Court has already determined that Plaintiff has not demonstrated that there was a clearly established constitutional violation. Accordingly, the Section 1983 claim against Defendant Clark is also dismissed with prejudice.

    **b. Count II – Deliberate Indifference**

Next, Plaintiff brings a deliberate indifference claim against Defendants Pennypacker and Clark. "Individual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). In bringing this claim, the plaintiff "must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Chavarriaga v. N. J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

Plaintiff's deliberate indifference will not be permitted to proceed. Put simply, the Plaintiff has not been able to show a clearly established constitutional harm that can be connected to Defendants Pennypacker or Clark. The analysis of this claim tracks the analysis of the individual Section 1983 claims against these Defendants. The Court has found that neither the claim for the

April 14th false arrest nor the claim based on requiring Plaintiff to follow Defendants' written instructions to be cognizable in this case; thus, the Court will not recognize deliberate indifference claims on these bases. Count II of Plaintiff's Amended Complaint is dismissed with prejudice.

### c. Count III – Unconstitutional Seizure of Person or "False Arrest"

Following the previous motion to dismiss, the Plaintiff's unconstitutional seizure, or "false arrest," claim against Defendant Eaton was the sole claim to survive the motion to dismiss. *See* Order at ECF No. 64. Now, he brings the claim again and alleges a separate incident against both Defendants Eaton and Cullen.

To bring a claim for false arrest the Plaintiff must show "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012); *see also Berg v. County of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) (defining a seizure to occur "for Fourth Amendment purposes" when a person "is detained by means intentionally applied to terminate his freedom of movement."). Probable cause for an arrest "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves the warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Berry v. Kabacinski*, 704 F. App'x 71, 73 (3d Cir. 2017).

The Court will analyze each alleged incident in turn:

#### i. December 9, 2021 – Defendant Eaton

This Court previously determined that Plaintiff had sufficiently alleged a false arrest claim against Defendant Eaton for the incident on December 9, 2021, *see* ECF 63 at 13-14, and it finds the same upon review of Plaintiff's Second Amended Complaint. Here, Plaintiff has sufficiently alleged that on that December day, his movement was restrained without probable cause, and it is not apparent on the face of Plaintiff's Second Amended Complaint that qualified immunity protects

Defendant Eaton from suit. Plaintiff alleges that on December 9, 2021, Defendant Eaton came to his house and an argument ensued. *See* ECF 88 at ¶ 245(b). During the argument, Plaintiff walked out of the room. *See id.* at ¶ 245(c). Defendant Eaton then allegedly grabbed Plaintiff, screamed at him, and "menace[d] Plaintiff's face and eyes with pepper spray." *Id.* at ¶ 245(d). Defendant Eaton then handcuffed Plaintiff, informed him that he was not under arrest, and forced Plaintiff out of Plaintiff's home. *See id.* at ¶ 245(e). Plaintiff alleges that Defendant Eaton forced him into "near-freezing weather" while barefoot, without a coat or gloves, for "half an hour." *See id.* at ¶ 245(f). Plaintiff was released and allowed back into his home after Defendant Eaton telephoned his supervisor. *See id.* at ¶ 245(g).

"In the context of a claim of false arrest . . . the officer is entitled to qualified immunity when 'a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Ciardiello v. Sexton*, 390 F. App'x 193, 199 (3d Cir. 2010) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). While a Complaint only tells one side of the story, the facts alleged do not provide a basis for qualified immunity to be invoked by Defendant Eaton at this point in the proceedings.[4] For qualified immunity to apply here, "the Court must ascertain whether it would have been clear to a reasonable officer confronted with the same situation that the conduct of the police officer in issue was unlawful." *Danielson v. Chester Twp.*, Civ. A. No. 13-5427, 2017 WL 2256996, at *3 (D.N.J. May 22, 2017) (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). Given the circumstances surrounding the arrest, and the fact that Plaintiff was immediately released after Defendant Eaton spoke to his supervisor, it is not clear at this stage of the proceedings that qualified immunity applies to Defendant Eaton's conduct. For these reasons, and because of

---

[4] Nothing in this Opinion should be read to foreclose Defendants from re-raising this defense should they choose to file a Motion for Summary Judgment.

the plaintiff-friendly standard under Fed. R. Civ. P. 12(b)(6), this claim survives Defendants' Motion to Dismiss.

### ii. April 14, 2022 – Defendants Eaton & Cullen

Plaintiff's second false arrest claim against Defendants Eaton and Cullen for an event at Plaintiff's home on April 14, 2022. During this encounter, Plaintiff alleges that Defendants Eaton and Cullen arrived at Plaintiff's home, unannounced. *See* ECF No. 88 at ¶ 246(a). Plaintiff met Defendants Eaton and Cullen outside and denied them entry into his home. *Id.* After Plaintiff denied them entry, Defendants Eaton and Cullen seized Plaintiff outside his home, placed him into handcuffs, and proceeded to conduct a warrantless search of Plaintiff's home. *Id.* at ¶¶ 246(b)-(c).

The Court dismisses Plaintiff's Section 1983 claim as to this event because qualified immunity applies. In the context of probationer searches, the standard is not "probable cause," but instead a lower standard of "reasonable suspicion" applies. *See United States v. Knights*, 534 U.S. 112, 121 (2001) ("When an officer has *reasonable suspicion* that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." (emphasis added)). Pennsylvania law permits searches of probationers. 61 Pa. C.S. § 6182(b)(1) ("Agents may search the person and property of [Pennsylvania Board of Probation and Parole]-supervised offenders in accordance with the provisions of this section."); *see also id.* §§ 6182(d)(2) ("A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the department-supervised offender contains contraband or other evidence of violations of the conditions of supervision."). The statute also provides a list of factors to be considered in determining whether reasonable suspicion existed so as to warrant a search. *See id.* § 6182(d)(4)(i)-(viii) (listing factor).

Further, temporary detention of the probationer is permitted during these searches. *See id.* § 6182(d)(3) ("The department-supervised offender may be detained if the department-supervised offender is present during a property search."); *see also Muehler v. Mena*, 544 U.S. 93, 98 (2005) ("An officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." (quotation marks omitted)). Plaintiff was subject to the provisions of the Pennsylvania statutes authorizing search and temporary detainment because he was under supervision by the Board of Probation and Parole.

Qualified immunity forecloses Plaintiff's claim as to the April 14, 2022, incident at Plaintiff's home. When Defendants Eaton and Cullen arrived at Plaintiff's home, he refused them entry, even though he was subject to the search conditions as an offender under the supervision of the Board of Probation and Parole. Based on the Defendant's refusal to permit the search, a reasonable officer in Defendants' position could conclude that they had reasonable suspicion to search the premises and temporarily detain Plaintiff during that search. Accordingly, this claim is dismissed with prejudice.

### d. Count IV – Retaliation – 42 U.S.C. § 1983

Next, Plaintiff has brought a retaliation claim in violation of 42 U.S.C. § 1983 against Defendants Eaton and Cullen. The elements of this claim require Plaintiff to show: "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010). Plaintiff alleges that he was retaliated against by Defendants Eaton and Cullen after he complained about their misconduct. *See* ECF No. 88 at ¶ 260. He argues that this retaliation took

two forms: (1) making up a technical parole violation and (2) ordering Plaintiff to attend a sex offender program located an hour away from Plaintiff's residence. *See id.*

Plaintiff's claim will survive to the extent that it is based on his allegation that Defendants falsified a technical parole violation in retaliation of protected speech.[5] *See* ECF No 88 at ¶ 279; *see also Millbrook v. Potter*, Civ. A. No. 3:12-CV-1284, 2014 WL 901141, at *12 n.14 (M.D. Pa. Mar. 7, 2014) ("The filing of a false disciplinary charge is not a constitutional violation unless the charge was filed for the exercise of a constitutional right."). At this point, Plaintiff has alleged sufficient facts for this claim to survive Defendants' Motion to Dismiss and proceed to discovery.

However, Defendants are entitled to qualified immunity as to Plaintiff's argument that he was retaliated against by requiring him to attend a sex offender program. By virtue of Plaintiff's position as an offender under supervision by the Board of Probation and Parole, the regulations provide probation officers a wide latitude of discretion as to requiring special probationers to "follow[ ] written instructions of the Board or the parole supervising staff." 37 Pa. Code § 65.4. Thus, it cannot be said the Defendants' committed a retaliatory act by prescribing a requirement on Plaintiff which they were legally permitted to put in place, and even then it certainly could not be said that Defendants violated "clearly established" law. Accordingly, Count IV of Plaintiff's Second Amended Complaint survives Defendants' Motion to Dismiss to the extent that it is based on Defendants' allegedly retaliatory act of filing a false technical parole violation against Plaintiff.

  e. **Count V – Conspiracy Against Rights – 42 U.S.C. § 1983**

Finally, Plaintiff has bought a claim of conspiracy in violation of 42 U.S.C. § 1983, or claim of "conspiracy against rights," against Defendants Eaton, Cullen, Clark, and Pennypacker.

---

[5] The Court, for the purposes of this Opinion, assumes, but ultimately reserves final judgment, as to whether Plaintiff engaged in constitutionally protected conduct/speech.

To succeed on such a claim, "a plaintiff must prove that persons acting under color of state law reached an understanding to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). Specifically, the elements of the claim are: "(1) two or more [state actors] conspire to deprive any person of constitutional rights; (2) one or more of the conspirators performs any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States." *Id.* at 294 n.15 (cleaned up) (quoting *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).

As the court has previously analyzed, for several of the Defendants named in this Count, there is no underlying constitutional violation under which this claim may proceed. Regardless, Plaintiff's claim here plainly fails as he has failed to demonstrate a central tenet of any conspiracy claim: agreement. *See id.* ("[P]laintiff must provide some factual basis to support the existence of the elements of a conspiracy: *agreement* and concerted action." (emphasis added)); *see also Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) ("To constitute a conspiracy, there must be a meeting of the minds."). While this evidence to this effect may be "circumstantial," *see Jutrowski*, 904 F.3d at 295, a plaintiff may not merely "rely on subjective suspicions and unsupported speculation." *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 695 (M.D. Pa. 2015) (citing *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991)).

Plaintiff has not pled sufficient facts to establish that a "meeting of the minds" among the named Defendants may be reasonably inferred. *Jutrowski*, 904 F.3d at 295. Potential circumstantial evidence that would provide a sufficient basis includes facts that "alleged conspirators did or said something to create an understanding, the approximate time when the agreement was made, the

specific parties to the agreement, the period of the conspiracy, or the object of the conspiracy." *Id.* (cleaned up) (citing *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010)). Plaintiff has plead a series of conclusory statements alleging a conspiracy without the required factual underpinning to sufficiently support an allegation that there was an agreement between the named Defendants. Accordingly, Count V of the Second Amended Complaint is dismissed.

## V. CONCLUSION

Qualified immunity forecloses many of Plaintiff's Section 1983 claims; however, two claims survive and shall proceed to discovery. Plaintiff may proceed against (1) Defendant Eaton on the allegation of false arrest for the December 9, 2021 incident and (2) and Defendants Eaton and Cullen on the allegations that these Defendants falsified a technical parole violation in retaliation for constitutionally protected speech/conduct. For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 91) is **GRANTED IN PART AND DENIED IN PART.** An appropriate order follows.

BY THE COURT

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge